UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOANN RICHARDS,

       Plaintiff,                      CIVIL ACTION NO. 16-10905

       v.                             DISTRICT JUDGE ROBERT H. CLELAND

COMMISSIONER OF             MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Joann Richards seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to Social Security benefits for her physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 16) and Defendant's Motion for Summary Judgment (docket no. 19). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 5.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.      RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 16) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 19) be **GRANTED**.

II.     PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability and disability insurance benefits on April 8, 2013, alleging that she had been disabled since July 27, 2012, due to "High Blood Pressure," and "Back Injury." (TR 10, 155.) The Social Security Administration denied Plaintiff's claims on July 16, 2013, and Plaintiff requested a *de novo* hearing. (TR 88, 92.) On June 12, 2014, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Patrick J. MacLean. (TR 29-78.) In a September 24, 2014 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing past relevant work as a bank manager, mortgage loan processer, supervisor of credit and loan collections, and bank vice president. (TR 16-17.) The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court. (Docket nos. 16, 19.)

## III.   HEARING TESTIMONY AND MEDICAL EVIDENCE

The ALJ sets out a detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony, which Defendant adopts. (TR 10-17; docket no. 19 at 4.) Plaintiff briefly summarizes the facts. (Docket no. 16 at 9.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between the record and the ALJ's recitation of the facts. Therefore, the undersigned incorporates the factual recitations by reference. Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017; that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 27, 2012; and that Plaintiff suffered from one severe impairment: multilevel degenerative changes of lumbar spine. (TR 12.) Next, the ALJ found that Plaintiff's impairment did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 13-16.) The ALJ then found that Plaintiff's allegations regarding the extent of her symptoms were not fully credible and that Plaintiff had the following Residual Functional Capacity (RFC):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant requires a sit/stand, at-will, option every 30 minutes. The claimant is limited to occasional climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; and occasional balancing, stooping, crouching, kneeling and crawling.

(TR 13.) Subsequently, in reliance on the testimony of a qualified Vocational Expert, the ALJ found that Plaintiff was capable of her performing her past relevant work as a bank manager, mortgage loan processor, supervisor of credit and loan collections, and vice president of a bank, as those jobs are generally performed. (TR 16-17.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from July 27, 2012, through the date of the decision. (TR 17.)

## V.  LAW AND ANALYSIS

### A.  Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r of*

3

*Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the Court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

4

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). The court

can only "reverse the [ALJ's] decision and award benefits . . . if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176.

Plaintiff seeks reversal of the ALJ's decision and an immediate award of benefits on the grounds that "the ALJ's rejection of Plaintiff's severe impairments and errors at Steps Two, Three, and Four of the sequential process does not comply with Social Security Rules and Regulations." (Docket no. 16 at 10.) More specifically, as the undersigned interprets Plaintiff's brief, Plaintiff argues that (1) the ALJ erred in not considering Plaintiff's additional impairments other than "the multilevel degenerative changes of lumbar spine"; (2) the ALJ erred in not identifying which disability listings he considered; (3) the ALJ did not properly credit Plaintiff's allegations of pain; (4) the ALJ erred in formulating Plaintiff's RFC because the "sit/stand, at-will, option every 30 minutes" limitation is confusing and because the ALJ does not include a "narrative discussion" of how Plaintiff is capable of performing light work with limitations. The undersigned will address each of these issues in turn.

*1.    Discussion of Plaintiff's Impairments*

In performing his Step 2 evaluation, the ALJ found that Plaintiff had one severe impairment: "multilevel degenerative changes of lumbar spine." (TR 12.) Plaintiff argues that she has the following additional severe impairments, which the ALJ did not properly consider: "lumbar spondylosis; spondylolisthesis; hypertension; hyperlipidemia; neck pain and trauma; hip pain and decreased range of motion; and [s]ciata." (Docket no. 16 at 10.)

As Plaintiff acknowledges, "once any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps," making it "'legally irrelevant' that [Plaintiff's] other impairments were determined to be not severe."

6

*McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. App'x 516, 522 (6th Cir. 2008) (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). This is so because the second step is designed simply to screen out and dispose of baseless claims. *Anthony*, 266 F. App'x at 457. Stated differently, as long as the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error. *See Marziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Defendant argues that, in this case, the ALJ did sufficiently account for Plaintiff's other impairments elsewhere in his analysis. Defendant is correct.[1] In formulating Plaintiff's RFC, the ALJ discussed how Plaintiff was diagnosed with and underwent physical therapy for "mild" or "very mild" lumbar spondylosis in late 2011, and was referred to physical therapy for lumbar spondylolisthesis in June 2013. (TR 14; 280) The ALJ discusses Plaintiff's hip issues at several points in his decision, noting that some medical findings show Plaintiff had decreased range of motion in her right hip, while others, including an X-ray taken in October 2012, showed "no evidence of fracture, dislocation or significant degenerative change." (TR 14.) The ALJ also notes that Plaintiff fell in 2011 and was involved in a car accident in 2012, and that the state internal consultative examiner, Dr. Harold Nims, D.O., found Plaintiff had a "history of multiple traumas to the neck and back." (TR 15.) Finally, the ALJ gave "no weight to the sciatica diagnosis," by Dr. Donald Campbell, Jr., on the grounds that "it appears to have been based

---

[1] Defendant is also correct in pointing out that the impairment which the ALJ *did* consider to be severe—the multilevel degenerative changes of lumbar spine—appears to encompass at least two of the impairments which Plaintiff alleges the ALJ did not consider, lumbar spondylosis and spondylolisthesis. *See Thompson v. Colvin*, No. CIV. 12-4113-KES, 2013 WL 4810144, at *2 n.5 (D.S.D. Sept. 9, 2013) ("Degenerative lumbar spondylosis is a degeneration in the lower area of the spine that results in pain.") (citation omitted); Stedman's Medical Dictionary, 840330 (2014 Ed.) (Spondylolisthesis is "forward movement of the body of one of the lower lumbar vertebrae on the vertebrae below it, or on the sacrum.").

7

primarily on the subjective complaints of the claimant and is not supported by objective findings." (TR 15.) Plaintiff fails to point to any objective findings which contradict this finding.

After discussing the evidence, the ALJ specifically found that Plaintiff's RFC should reflect "limitations that take into account her back pain, including the need for a sit/stand option." (TR 16.)

As for the remaining allegedly severe impairments (hypertension and hyperlipidemia), the ALJ specifically mentions a finding from Dr. Nims that Plaintiff's "chronic hypertension" is "under good control," a finding which Plaintiff does not contest. (TR 15.) Defendant concedes that the ALJ did not discuss Plaintiff's hyperlipidemia. (Docket no. 19 at 7.) According to the American Heart Association, hyperlipidemia "can cover many conditions, but for most people, it comes down to . . . high cholesterol and high triglycerides."[2] Plaintiff presents no argument regarding how her high cholesterol constitutes a severe impairment, or how it impacts her ability to work in any way. Furthermore, in her Disability Report, Plaintiff identified her medical conditions as "high blood pressure" and "back injury" only (155); and, at the hearing before the ALJ, she specifically testified that the reason she was unable to work was because of pain in her back and leg area (TR 41.)

The undersigned finds that the ALJ properly evaluated Plaintiff's other impairments, and that his findings are supported by substantial evidence. Other than the hyperlipidemia diagnosis, Plaintiff fails to specifically identify any medical evidence that the ALJ actually did not discuss. Plaintiff's assertion that the "combination of impairments was never considered," and that the "ALJ never mentions or evaluates the remaining alleged severe impairments in the decision"

---

[2] *See* Hyperlipidemia, *available at*: http://www.heart.org/HEARTORG/Conditions/Cholesterol/About Cholesterol/Hyperlipidemia_UCM_434965_Article.jsp#.WKIaPm8rJyw (last accessed Feb. 15, 2017).

8

(docket no. 16 at 10) is simply incorrect. It is clear that the ALJ considered all of Plaintiff's medical conditions (again, with the exception of hyperlipidemia) when formulating Plaintiff's RFC.

### 2. *Failure to identify specific disability listings*

Next, Plaintiff briefly argues that the ALJ erred because he did not "mention what listings were considered" at Step 3. (Docket no. 16 at 11.)

The ALJ's Step 3 analysis provides:

> The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> Although the claimant has the severe impairments listed above, the impairment, or combination of impairments, does not meet or medically equal the specific criteria for any impairment listed in Appendix 1, Subpart P, Regulations No. 4.

(TR 13.)

It is true that the ALJ did not analyze Plaintiff's impairments under any specific listing at Step 3. However, an ALJ is not required to consider every listing or to consider listings that the claimant "clearly does not meet." *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013). The proper inquiry is whether "the record 'raise[s] a substantial question as to whether [the claimaint] could qualify as disabled' under a listing," and, if so, "the ALJ should discuss that listing." *Id.* (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)). It is the claimant's burden to demonstrate that such a substantial question exists. *Id.* at 642. Absent "specific evidence that demonstrates [the claimant] reasonably could meet or equal every requirement of the listing, . . . the ALJ does not commit reversible error by failing to evaluate a

9

listing at Step Three." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. App'x 426, 432-33 (6th Cir. 2014).

Here, Plaintiff does not identify any specific listing which she believes she meets, let alone point to evidence which establishes that she meets that listing. Moreover, she clearly does not meet the requirements of listing 1.02, major dysfunction of a joint, because, as the ALJ found, the record establishes that she is able to ambulate with a normal gait.[3] (TR 15.) Her ability to ambulate normally also disqualifies her from listing 1.04(C) (one of the "disorders of the spine"),[4] and her negative straight-leg test results disqualify her from listing 1.04(A). Finally, she does not present an "operative note or pathology report" showing spinal arachnoiditis, a requirement of listing 1.04(B).

Plaintiff's unsubstantiated argument cannot establish that the record raises a substantial question that her impairments meet the criteria of Listing 1.02 or Listing 1.04, which appear to the undersigned to be the Listings most relevant to Plaintiff. She therefore cannot establish that the ALJ erred in not specifically evaluating or discussing any particular Listing. Plaintiff's argument fails in this regard.

### 3. *The ALJ's evaluation of Plaintiff's Pain/Credibility*

Next, Plaintiff argues that the ALJ "never evaluates the claimant's subjective complaints in accordance with the disability regulations pertaining to evaluation of symptoms under SSR

---

[3] *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.02 (A) (requiring an "inability to ambulate effectively").

[4] *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.04 ("Disorders of the spine").

96-7p."[5]  (Docket no. 16 at 12.)  Essentially, Plaintiff challenges the ALJ's finding that Plaintiff's allegations of pain were not wholly credible.

An ALJ's credibility determination is to be afforded great weight. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citation omitted) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."). It must, however, contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently clear to the individual and to any subsequent reviewers the weight the adjudicator gave the individual's statements and the reasons for that weight." SSR 96–7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible," and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements about her symptoms are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily

---

[5] As Plaintiff notes, SSR 96-7p was superseded by SSR 16-3p. SSR 16-3p eliminates use of the term "credibility," from regulatory policy, to "clarify that subjective symptom evaluation is not an examination of an individual's character," and to "more closely follow . . . regulatory language regarding symptom evaluation." SSR 16-3p, *available at* 2016 WL 1119029, at *1 (March 16, 2016). SSR 16-3p took effect on March 16, 2016, well over one year after ALJ MacLean issued his decision in this matter, and therefore it does not apply here. *See Murphy v. Comm'r of Soc. Sec.*, No. 1:15-cv-126, 2016 WL 2901746, at *8 n.6 (E.D. Tenn. May 18, 2016) (citations omitted) (concluding SSR 16-3p should not be retroactively applied).

11

activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying the factors). "Prior work record and efforts to work" are also relevant. SSR 96-7p. Nevertheless, "[i]t is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Comm'r*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases).

Plaintiff contends that, in evaluating Plaintiff's credibility, the ALJ failed to discuss Plaintiff's work history, the medical evidence, the frequency of her pain, and her activities of daily living.[6] (Docket no. 16 at 12.)

Plaintiff is incorrect that the ALJ did not discuss the medical evidence and her activities of daily living. It is unnecessary to repeat the ALJ's entire discussion of Plaintiff's medical history; in addition to the medical evidence discussed above, the undersigned notes the ALJ's conclusion that, "[t]he record does not demonstrate the significantly limited range of motion, motor weakness, neurological deficits, or sensation loss that are associated with intense and disabling pain." (TR 15.) This conclusion is followed by a citation to extensive medical records from one of Plaintiff's physicians, Dr. Donald Campbell, dating back to 2011. In particular, the ALJ emphasizes Dr. Campbell's treatment notes stating that Plaintiff's musculoskeletal exam was normal, with normal "strength, tone, and reflexes," and negative straight leg raising. (TR

---

[6] Plaintiff also argues that the ALJ failed to consider "aggravating factors." (Docket no. 16 at 12.) However, she fails to identify the aggravating factors that the ALJ allegedly failed to consider.

15.) The ALJ also discusses a July 2014 MRI requested by Dr. Campbell, which shows the "multilevel degenerative lumbar disc disease," that the ALJ found to be a severe impairment. (TR 15, 288.)

As for Plaintiff's activities of daily living, the ALJ specifically noted Plaintiff's statements that Plaintiff is able to "prepare meals, make her bed, do dishes and drive." (TR 14.) Plaintiff also testified that she attends church on Sundays; drives two hours, twice a month, to get her hair done; and is otherwise able to take care of her personal needs, although her husband helps her wash "difficult to reach areas." The ALJ discusses all of this testimony. (TR 14.) Finally, the ALJ emphasizes that Plaintiff is able to walk without a cane or other "assistive device." (TR 15.)

The ALJ discusses Plaintiff's medications, noting that Plaintiff sometimes took her husband's pain medication, which helps with her pain and does not cause her any side effects. (TR 13.) At the time of the hearing, Plaintiff was only taking Lisinopril for her blood pressure and Lipitor for her cholesterol, neither of which caused any side effects. (TR 45, 49.)

Finally, in discounting Plaintiff's credibility, the ALJ notes that:

> [T]he claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. She has been treated conservatively with physical therapy and pain medication. Although the claimant reported little relief from physical therapy in June 2014, physical examination of her musculoskeletal system and extremities was normal.

(TR 15-16.) Plaintiff takes issue with this finding, arguing that the ALJ failed to consider the fact that she had no insurance from December 2013 to May 2014. (Docket no. 16 at 13.) The ALJ did, however, mention Plaintiff's testimony that she went for a short period of time without insurance. (TR 13.) More important, however, is the fact that this gap in insurance coverage was only temporary. By the time of the administrative hearing on June 12, 2014, Plaintiff did

13

have insurance coverage, and explained that she had still not pursued injections in her back to address her pain (although she and her doctor had discussed them) because she wanted "unequivocal" assurances that the injections "would make a difference in [her] life," and she wanted to try other methods of pain relief first. (TR 56-57.)

It is true that the ALJ did not explicitly discuss Plaintiff's work history or the "frequency" of her pain in evaluating her credibility. He did, however, discuss her prior work history during his Step 4 analysis regarding whether Plaintiff has the capacity to perform relevant past work, and he was clearly aware that Plaintiff has a strong work record. Moreover, his failure to address these two factors does not constitute reversible error, as "[i]t is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Comm'r*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases).

In sum, the record reflects that the ALJ considered a number of factors in evaluating Plaintiff's credibility, and that the ALJ's findings related to Plaintiff's credibility are supported by substantial evidence in the record. Plaintiff's Motion should be denied in this regard.

### 4. *The ALJ's formulation of Plaintiff's RFC*

Plaintiff's remaining arguments relate to the ALJ's analysis at Step 4, regarding Plaintiff's Residual Functional Capacity. The ALJ found that Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant requires a sit/stand, at-will, option every 30 minutes. The claimant is limited to occasional climbing of ladders, ropes, or scaffolds; occasional climbing of ramps or stairs; and occasional balancing, stooping, crouching, kneeling and crawling.

(TR 13.)

First, Plaintiff contends that the "sit/stand, at-will, option every 30 minutes," limitation included by the ALJ is "contradictory and not within the SSA rules and regulations." (Docket no. 16 at 12.) The undersigned interprets the ALJ's formulation of Plaintiff's RFC as requiring that Plaintiff be allowed a break every 30 minutes, either from standing or sitting, if she chooses. Evidence in the record, relied upon by the ALJ, supports Plaintiff's capacity to work with this accommodation. The ALJ notes that Plaintiff "stated she is able to sit for 45-50 minutes, stand for 30 minutes and walk one block." (TR 13; 50-51.) And, the Vocational Expert testified that Plaintiff's past relevant work would allow for a "sit/stand option every 30 minutes." (TR 72-73.) The undersigned acknowledges the Vocational Expert's testimony that requiring an "at will" sit/stand option would eliminate Plaintiff's eligibility for any jobs "at any exertional level." (TR 75.) However, the ALJ clearly did not intend to find that Plaintiff requires a true "at will" sit/stand option; otherwise, he would not have included the "every thirty minutes" qualification. The undersigned concludes that this limitation is not self-contradictory, and furthermore that it is not prohibited by any of the regulations Plaintiff cites. *See, e.g.*, SSR 83-12 ("There are some jobs in the national economy . . . in which a person can sit or stand with a degree of choice. . . . In cases of unusual limitation of ability to sit or stand, a [Vocational Expert] should be consulted to clarify the implications for the occupational base.").

Plaintiff also argues that the ALJ's decision should be reversed because the ALJ did not comply with SSR 96-8p, which requires the ALJ to provide a "'narrative discussion' describing the evidence that supports each conclusion" in the RFC, as well as a discussion of an individual's "ability to perform sustained work activities . . . on a regular continuing basis." (Docket no. 16 at 14 (citing SSR 96-8p).) As is set forth above, the ALJ did indeed discuss the medical evidence related to Plaintiff's impairments in formulating the RFC. And, "[a]lthough a function-

15

by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (quotation marks and citation omitted). "[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Id.* (quotation marks and citation omitted). Here, after detailing Plaintiff's medical history and explaining the basis for his finding that Plaintiff is only partially credible, the ALJ states that the evidence of record demonstrates that Plaintiff's limitations "will not interfere with her ability to function independently, appropriately, effectively, and on a sustained basis," and that "the residual functional capacity addresses demands that might exacerbate the claimant's symptomatology, and takes into consideration the location, duration, frequency, and intensity of the symptomatology." (TR 16.) The ALJ also specifically finds that the "objective evidence indicates the claimant experiences some limitation, but not to such a degree that she is prevented from performing work at the light exertional level with limitations that take into account her back pain, including the need for a sit/stand option." (TR 16.)

The undersigned concludes that this is sufficient, particularly in light of the undeveloped nature of Plaintiff's argument on the issue. Plaintiff does not explain or argue in any detail how the ALJ's formulation of Plaintiff's RFC does not sufficiently account for her limitations. The findings the ALJ does make are supported by substantial evidence in the record. Plaintiff's Motion should be denied to the extent that she alleges error with the ALJ's formulation of her RFC.

**VI.    CONCLUSION**

For the reasons stated herein, the Court should DENY Plaintiff's Motion for Summary Judgment (docket no. 14) and GRANT Defendant's Motion for Summary Judgment (docket no. 15).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 16, 2017      s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

       I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: February 16, 2017                    s/ Lisa C. Bartlett
                                                     Case Manager